<u>UNITED STATES DISTRICT COURT</u>
<u>SOUTHERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| EVERYTOWN FOR GUN SAFETY<br>SUPPORT FUND, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | DOCKET NO:_____ |
| v. | ) | |
| | ) | COMPLAINT FOR |
| BUREAU OF ALCOHOL, TOBACCO, | ) | INJUNCTIVE RELIEF |
| FIREARMS, AND EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>INTRODUCTION</u>

1.  Suicide by firearm is the number one source of violence-related injury death in the United States.  From 2012-2016, an average of over 21,000 Americans died by suicide with a firearm each year.  Gun suicides take the lives of more Americans than all other methods of suicide combined, and account for more deaths than all homicides.  In fact, gun suicides make up approximately two-thirds of all firearm deaths in the United States, leading to the deaths of as many as 59 people per day on average from 2012-2016.  This public health crisis is far from abating – the number of gun suicides has risen every year for the past decade for which data is available.

2.  On December 14, 2016, Everytown for Gun Safety Support Fund ("Everytown"), an organization that conducts original research and promotes evidence-based policies to prevent and reduce gun violence, requested information related to firearm suicides from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. ("FOIA").  FOIA Request No. 2017-0208 is attached hereto as **Exhibit A**.

3.   Specifically, Everytown's FOIA request sought statistical data, aggregated on a nation-wide and state-by-state basis, pertaining to firearms used in suicides or attempted suicides that were subsequently recovered by law enforcement and traced by the ATF.   The categories of requested data would indicate: (i) the length of time that typically passes between the purchase of a gun and a suicide attempt; (ii) the types of guns primarily used in suicides; (iii) whether the guns recovered after suicides are usually purchased in the state where they are recovered; and (iv) whether the guns are typically in the possession of the original buyers.

4.   Everytown submitted its request in order to better understand where and when people attempting, or dying by, suicide obtain their firearms.   Numerous public health experts have concluded that studying the availability of firearms is critical to understanding, and ultimately reducing, suicide mortality rates in the United States, because access to a firearm during a moment of crisis significantly increases the chance a person will die by suicide.   The several thousand guns recovered and traced by the ATF each year after a suicide or attempted suicide provide a unique data set to help conduct this analysis.

5.   Although Congress has placed tight limitations on the ATF using its appropriated funds to disclose the contents of its Firearms Trace System database on an individual gun-by-gun basis, the ATF is permitted to release "statistical aggregate data" regarding "firearms misuse." Consolidated and Further Appropriations Act 2012, Pub. L. 112-55, 125 Stat. 552, 610 (2011) (the "2012 Appropriations Act").

6.   In fact, through a number of public reports, the ATF already makes available statistical aggregate data pertaining to, *inter alia*, the factual circumstances under which guns are recovered

by law enforcement, the amount of time that typically passes between a gun purchase and recovery, and the types of guns recovered by law enforcement.[1]

7.   However, the ATF's reports do not show the critical overlap between the various categories of aggregate trace data.  For example, ATF reports include information about how much time usually passes between the time a gun is purchased and the time it is recovered by law enforcement (the "time to crime").[2]  But these reports do not show or compare the average "time to crime" for suicides and attempted suicides, as opposed to the average "time to crime" for homicides or aggravated assaults.  Similarly, while ATF reports show the types of firearms most frequently recovered by law enforcement,[3] they do not show the types of firearms most frequently recovered in a suicide as opposed to a homicide.

8.   Despite the importance of the requested data, and the fact that its release is authorized under FOIA, ATF improperly refused to release any records in response to Everytown's request, claiming that such disclosure was prohibited by the 2012 Appropriations Act.  The ATF's determination letter, dated April 6, 2017, is attached hereto as **Exhibit B**.

9.   On administrative appeal, the Department of Justice's Office of Information Policy ("OIP") upheld the ATF's determination.  OIP's determination letter for Appeal No. DOJ-AP-2017-004986, dated July 6, 2017, is attached hereto as **Exhibit C**.[4]

10.   This action seeks to compel the ATF to immediately process and release the requested data, pursuant to 5 U.S.C. § 552(a)(3).

---

[1]    *See, e.g.,* Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Trace Data – 2016, https://www.atf.gov/resource-center/firearms-trace-data-2016 (last visited Mar. 7, 2018).

[2]    *Id.*  "Time to crime" is a term of art; it does not necessarily indicate that a crime was committed.

[3]    *Id.*

[4]    Although the letter is dated July 6, 2017, Everytown did not receive the appeal determination letter until January 30, 2018.

JURISDICTION AND VENUE

11.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(A).  The Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 5 U.S.C. §§ 701 - 706.

12.  Venue is premised on the principal place of business for Everytown and is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

PARTIES

13.  Plaintiff Everytown is an independent, non-partisan 501(c)(3) gun violence prevention organization headquartered in New York.  Everytown is dedicated to understanding and reducing gun violence in America by, among other things, conducting original research, developing evidence-based policies, and communicating this knowledge to the American public and policymakers.

14.  Everytown regularly publishes reports and fact sheets containing research into the sources and causes of gun violence and potential avenues for reducing and preventing such violence.  Everytown reports its findings to the public in order to educate citizens, legislators, policymakers, and courts grappling with issues of gun violence and the prevention thereof.  In particular, recognizing that suicides account for over two-thirds of all gun deaths, Everytown makes available statistics related to firearm suicides, methods of suicide prevention and stories of survivors who have lost loved ones to suicide by firearm.[5]  Some of the fact sheets that Everytown has published on firearm suicides include (i) Firearm Suicide in the United States[6];

---

[5]      Everytown for Gun Safety Action Fund, Guns and Suicides, https://everytown.org/suicide-prevention/ (last visited Mar. 7, 2018).
[6]      Everytown for Gun Safety Support Fund, Firearm Suicides in the United States, https://everytownresearch.org/wp-content/uploads/2017/09/Suicide-in-USA-FACT-SHEET-091917A.pdf (last visited Mar. 7, 2018).

(ii) Unlocked and Loaded: How America's Children are Dying by Gun Suicide[7]; and (iii) Extreme Risk Protection Orders (ERPOs) and Suicide.[8]

15. Defendant ATF is an agency housed within the United States Department of Justice. The Department of Justice ("DOJ") is itself a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. §552(f)(1).

BACKGROUND

*Suicide by Firearm is a Public Health Crisis*

16. Access to a firearm during a period of crisis often means the difference between life and death. Studies show that while the vast majority of suicide attempts not involving a firearm do *not* result in death, approximately 85-90% of gun suicide attempts are fatal.[9] By comparison, the same studies indicate that 98% of people who attempt suicide through poisoning or drug overdose – the most common method of attempted suicide – survive the attempt.[10]

17. These figures are particularly striking because, according to one study, most people who survive a suicide attempt do not attempt again.[11] In fact, another study demonstrated that nearly

---

[7]     Everytown for Gun Safety Support Fund, Unlocked and Loaded: How America's Children are Dying by Gun Suicide, https://everytownresearch.org/wp-content/uploads/2017/09/UNLOCKED_LOADED-090817.pdf (last visited Mar. 7, 2018).

[8]     Everytown for Gun Safety Support Fund, Extreme Risk Protection Orders (ERPOs) and Suicide, https://everytownresearch.org/wp-content/uploads/2017/09/Suicide-ERPOS-090817.pdf (last visited Mar. 7, 2018).

[9]     Matthew Miller, *et al*., Suicide Mortality in the United States: The Importance of Attending to Method in Understanding Population-Level Disparities in the Burden of Suicide, 33 Ann. Rev. Pub. Health 393, 397 (2012); Matthew Miller, *et al*., The Epidemiology of Case Fatality Rates for Suicide in the Northeast, 43 Annals of Emergency Med. 723 (2004).

[10]     Miller, Suicide Mortality in the United States at 397; Miller, The Epidemiology of Case Fatality Rates for Suicide in the Northeast at 726.

[11]     David Owens, *et al.*, Fatal and Non-Fatal Repetition of Self Harm: Systematic Review, 181 British J. Psychiatry 193, 195 (2002).

half of surveyed patients who had recently survived a suicide attempt had spent ten minutes or less deliberating before the actual attempt.[12]

18. The number of people who die from suicide by firearm in the United States is staggeringly large – and growing. According to the Center for Disease Control and Prevention ("CDC"), the firearm suicide rate has increased every year from 2006 to 2016 (the last year for which data is available).[13] Data from the CDC shows that in 2006, the firearm suicide rate was 5.66 per 100,000 people; that rate rose to 7.10 per 100,000 people in 2016.[14] In contrast, the rate of suicide deaths by drug overdose has stayed largely the same.[15] A study looking at data from 2010 concluded that the gun suicide rate in the United States was eight times higher than the gun suicide rate of other high-income countries.[16]

19. Certain populations are especially vulnerable to suicide by firearm. A Veterans Affairs review showed that an average of twenty veterans died by suicide each day in 2014; 67% of those deaths were due to firearm suicide.[17] The same study showed that, in 2014, veterans had a suicide rate that was 22% higher than civilian adults (once the data was adjusted for differences in age and gender).[18]

---

[12]    Eberhard A. Deisenhammer, *et al*., The Duration of the Suicidal process: How Much Time is Left for Intervention Between Consideration and Accomplishment of a Suicide Attempt?, 70:1 J Clin. Psychiatry 19 (2009).

[13]    Center for Disease Control and Prevention, WISQARS, Fatal Injury Reports, National, Regional and State, 1981-2016, https://webappa.cdc.gov/sasweb/ncipc/mortrate.html (last visited Feb. 14, 2018).

[14]    *Id*.

[15]    *Id*.

[16]    Erin Grinshteyn and David Hemenway, Violent Death Rates: The US Compared with Other High-Income OECD countries, 2010, 129 Am. J. Med. 266, 269 (2016).

[17]    U.S. Department of Veterans Affairs-Office of Suicide Prevention, Suicide Among Veterans and Other Americans, 2001-2014 at 4 (Aug. 3, 2016), https://www.mentalhealth.va.gov/docs/2016suicidedatareport.pdf  (last visited Mar. 9, 2018).

[18]    *Id*.

20.   According to CDC data, the firearm suicide rate for children between the ages of 10-17 has also been rising since its low point in 2007, reversing decreases in earlier years.[19]   While nearly 1 per 100,000 children between 10 and 17 died by firearm suicide in 2007, the reported rate nearly doubled to 1.9  per 100,000 in 2016.[20]   An analysis of data from 2010 demonstrated that American children ages 5 to 14 are 11 times more likely to die by gun suicide than their peers in other high-income countries.[21]   One study indicated that over 80% of youth gun suicides used a firearm belonging to a parent or relative.[22]

21. The data that Everytown has requested from the ATF could be used by researchers, scholars, and policymakers to better understand -- and inform strategies aimed at addressing -- this growing epidemic of suicides by firearm.

*ATF's Tracing Program and the Tiahrt Rider*

22.   When a local law enforcement agency recovers a firearm at a potential crime scene, the agency can submit a "tracing" request to the ATF's National Tracing Center.   "Tracing" is a tool used by the ATF to determine the history of a firearm.   The tracing process follows the path of a firearm from manufacture to distribution to sale.   Whenever such a query is made, ATF records the data obtained in the investigation — known as "trace data" — in its Firearms Tracing System database.   ATF's National Tracing Center is the only agency authorized to trace firearms.

23. Every year, relying on this trace data, ATF releases a number of reports, on a nation-wide and state basis, showing, *inter alia*, (i) the total number of firearms traced; (ii) the number of each type of firearm traced (pistols, rifles, revolvers, etc.); (iii) the top ten categories of

---

[19]     Center for Disease Control and Prevention, WISQARS, https://webappa.cdc.gov/sasweb/ncipc/mortrate.html.
[20]     *Id.*
[21]     Grinshteyn, <u>Violent Death Rates</u> at 268-69.
[22]     Renee M. Johnson, *et al.*, <u>Who are the Owners of Firearms Used in Adolescent Suicides?</u> 40:6 Suicide and Life-Threatening Behavior 609 (2010).

situations leading to the recovery (homicide, suicide, attempted suicide, aggravated assault, etc.); (iv) the top 15 source states for firearm traces; (v) the most common "time-to-crime" rates for firearm recoveries; and (vi) the ages of the possessors.[23]

24.   To better study where and when guns used in suicide are obtained, and the types of firearms used in suicides, it is important to understand how firearm recovery statistics for suicides are different than the general amalgamation of situations leading to gun recoveries. However, the reports the ATF does publish do not show this breakdown within the statistical aggregate data.  For example, while ATF publishes the top categories of firearm types recovered in a particular state and the top ten categories of situations leading to a firearm recovery (such as suicide or homicide), it does not publish what types of firearm are most frequently used in a suicide versus a homicide.  And while the ATF publishes reports showing the most common lengths of time that pass between the firearm purchase and recovery, it does not break down the "time to crime" statistics by the type of situation leading to the recovery, e.g., it does not show "time to crime" statistics for suicide recoveries.

25.   Since 2003, Congress has included a funding restriction on the ATF pertaining to its Firearms Trace Database system, as part of Congress' annual appropriations process.  This funding restriction has come to be known as the "Tiahrt Rider" or the "Tiahrt Amendment" after its original sponsor, Representative Todd Tiahrt.

26.   Over the years, the Tiahrt Rider has undergone a number of changes, including the addition of a number of exceptions and clarifications.  The most recent version of the Tiahrt Rider was approved as part of the 2012 Appropriations Act, and it states, in relevant part:

---

[23]   *See, e.g.,* Bureau of Alcohol, Tobacco, Firearms, and Explosives, <u>Firearms Trace Data – 2016</u>, available at https://www.atf.gov/resource-center/firearms-trace-data-2016 (last visited Mar. 7, 2018).

[D]uring the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part of all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . **except that this proviso shall not be construed to prevent**: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or **statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations**[.]

Pub. L. 112-55, 125 Stat. 125 552, 609-610 (2011) (emphasis added).

*Everytown's FOIA Request*

27.   On December 14, 2016, Everytown submitted a FOIA request to the ATF seeking statistical aggregate trace data related specifically to firearms used in suicides and attempted suicides. (Ex. A.)  Specifically, the request sought the following aggregated data:

    i.    Nationwide, the number of each firearm type (pistol, revolver, rifle, shotgun, other) that were used in a completed suicide and successfully traced in 2012-13;

    ii.    Nationwide, the number of each firearm type (pistol, revolver, rifle, shotgun, other) that were used in an attempted suicide and successfully traced in 2012-13;

    iii.    For each state, the number of guns that were used in a completed suicide and successfully traced in 2012-13 that were in the possession of the original buyer.

    iv.    For each state, the number of guns that were used in a completed suicide and successfully traced in 2012-13 that were in the possession of someone other than the original buyer.

    v.    For each state, the number of guns that were used in a completed suicide and successfully traced in 2012-13 that that were originally purchased in the same state in which they were recovered.

    vi.    For each state, the number of guns that were used in a completed suicide and successfully traced in 2012-13 that were traced less than 3 months after first purchase; that were traced between 3 and 6 months after first purchase; that were traced between 6 and 12 months after first purchase; that were traced between 1

and 2 years after first purchase; that were traced between 2 and 3 years after first purchase; and that were traced more than 3 years after first purchase.

vii. For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012-13 that were in the possession of the original buyer.

viii. For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012-13 that were in the possession of someone other than the original buyer.

ix. For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012-13 that that were originally purchased in the same state in which they were recovered.

x. For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012-13 that were traced less than 3 months after first purchase; that were traced between 3 and 6 months after first purchase; that were traced between 6 and 12 months after first purchase; that were traced between 1 and 2 years after first purchase; that were traced between 2 and 3 years after first purchase; and that were traced more than 3 years after first purchase.[24]

28. On March 14, 2017, having received no response from the ATF despite its statutory obligation to respond within 20 days, Everytown submitted an administrative appeal to OIP due to ATF's failure to respond.

29. On April 6, 2017, while Everytown's administrative appeal was pending, ATF responded to Everytown, rejecting the request for documents. (Ex. B.)  The ATF denial letter stated:

> You have requested material, which ATF is required to maintain pursuant to the Gun Control Act ("GCA") and/or is information contained in ATF Firearms Trace System database. This information is exempt from disclosure pursuant to Exemption (b)(3) of the FOIA and Public Law 112-55, 125 Stat. 552.
>
> ***
>
> Beginning in 2003, Congress placed restrictions on ATF's disclosure of certain GCA related information. In short, ATF can only provide certain GCA data to a law enforcement agency or a prosecutor solely in connection with a criminal investigation or prosecution. Beginning in Fiscal Year 2006, Congress included a

---

[24] The FOIA request originally sought two additional sets of data which Everytown no longer seeks.  On February 5, 2018, Everytown filed a new request seeking virtually the same data for the years 2014-2017.  That request is currently pending with the ATF.

provision within each iteration of the restriction, which effectively made the law permanent.

The most recent iteration of these various restrictions was included in ATF's 2012 Appropriation Bill, Public Law 112-55, 125 Stat. 552. Some of the information in the requested records falls within this restriction. Since the Fiscal Year 2006 through 2008 restrictions satisfy all the requirements of FOIA Exemption (b)(3), and the 2012 language is perpetuated from those restrictions, I am withholding the trace data pursuant to 5 U.S.C. § 552 (b)(3) and Public Law 112-55, 125 Stat. 552.

However, ATF provides yearly aggregate firearms trace data. All of ATF's statistics on firearms tracing from 2008 to 2015 are made publically available and can be located at https://www.atf.gov/resource-center/data-statistics.

30.  On April 7, 2017, the OIP closed Everytown's administrative appeal because the ATF had responded to Everytown's request.

31.  In June 2017, Everytown timely filed an administrative appeal with OIP due to the ATF's failure to disclose documents.  Everytown explained that ATF had inappropriately applied the Tiahrt Rider to Everytown's request because, *inter alia*, the Tiahrt Rider allows ATF to disclose "statistical aggregate data" related to "firearms misuse."

32. OIP upheld the ATF's determination, once again denying Everytown's request for information pursuant to the Tiahrt Rider.  (Ex. C.)  The letter stated that the Tiahrt Rider "prohibits ATF from using appropriated funds to disclose firearms database information."

33.  In past litigation, the ATF has argued that the Tiahrt Rider was passed to protect sensitive law enforcement information that could endanger on-going investigations.  *See, e.g., Watkins v. ATF*, No. 04-800, 2005 U.S. Dist. LEXIS 21624, 2005 WL 2334277, at *1 (D.D.C. Sept. 1, 2005).  None of the data requested by Everytown is sensitive law enforcement information and none of the date requested by Everytown could endanger ongoing investigations. In fact, as noted above, the ATF already makes certain categories of statistical aggregate data available on its website.

CAUSE OF ACTION
(Violation of the Freedom of Information Act, 5 U.S.C. § 552 *et seq.)*

34.  Plaintiff repeats and realleges paragraphs 1-33.

35.  To promote transparency in government, FOIA requires federal agencies — including the ATF — to make agency records available to the public upon request, with limited exceptions.

36.  To fulfill this purpose, courts have required that FOIA be construed broadly to provide information to the public and that exemptions from production be construed narrowly.  FOIA mandates a strong presumption in favor of disclosure.

37.  Under FOIA, the burden is on the government agency to show that the requested materials need not be produced because a particular FOIA exemption protects the material from disclosure.

38.  Contrary to the ATF's and OIP's assertions, none of FOIA's statutory exemptions apply to Plaintiff's FOIA request and the Tiahrt Rider does not bar – and in fact expressly allows – the disclosure of the requested statistical aggregate data.

39.  ATF's failure to promptly make available the data sought by Plaintiff's FOIA Request No. 2017-0208 violates FOIA, 5 U.S.C. § 552(a)(3)(A).


REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Court:

a) order ATF to immediately and expeditiously produce the requested aggregate trace data responsive to ATF FOIA Request No. 2017-0208;

b) award Plaintiff costs and reasonable attorney's fees incurred in this action; and

c) grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

Eric Tirschwell (ET-3023)
Alla Lefkowitz (AL-4664)
Everytown for Gun Safety Support Fund -
Litigation Team
(646) 324-8222
etirschwell@everytown.org
alefkowitz@everytown.org
132 E. 43rd Street, # 657
New York, NY 10017
(mailing address)

Lawrence S. Lustberg (LL-1644)
GIBBONS P.C.
(973) 596-4500
llustberg@gibbonslaw.com
One Gateway Center
Newark, NJ 07102-5310

Dated: March 15, 2018