UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EVERYTOWN FOR GUN SAFETY SUPPORT FUND,

Plaintiff,

-v-

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES,

Defendant.

18 Civ. 2296 (AJN)

---

**DEFENDANT BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES'
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2721
Fax: (212) 637-2686
Email: tomoko.onozawa@usdoj.gov

TOMOKO ONOZAWA
Assistant United States Attorney, *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND .........................................................................................................1

    A.    The ATF's Firearms Trace System Database ..........................................1

    B.    Tracing Data and Statistics .................................................................4

    C.    The Tiahrt Amendment's Prohibitions on the Release of Trace Data ...................6

    D.    Plaintiff's FOIA Request .....................................................................9

ARGUMENT ............................................................................................................11

    A.    Summary Judgment Standard ...............................................................11

    B.    The Tracing Data Sought by Plaintiff is Exempt From Disclosure Under
           FOIA Exemption 3.............................................................................12

    C.    Responding to Plaintiff's FOIA Request Would Require ATF to Create
           New Statistical Reports, Which Cannot be Compelled Under FOIA ...................17

CONCLUSION..........................................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Abdeljabbar v. Bureau of Alcohol, Tobacco, Firearms and Explosives,*
    74 F. Supp. 3d 158 (D.D.C. 2014) ..................................................................... 13, 14

*ACLU v. Department of Justice,*
    681 F.3d 61 (2d Cir. 2012) ...................................................................... 12, 15, 17

*Associated Press v. U.S. Dep't of Justice,*
    549 F.3d 62 (2d Cir. 2008) ................................................................................. 11

*Carney v. U.S. Dep't of Justice,*
    19 F.3d 807 (2d Cir. 1994) ................................................................................. 11

*Carson v. U.S. Office of Special Counsel,*
    534 F. Supp. 2d  99 (D.D.C. 2008) ..................................................................... 17

*Center for Investigative Reporting v. United States Dep't of Justice,*
    Case No. 17-cv-06557-JSC, 2018 WL 3368884 (N.D. Cal. July 10, 2018) ................ 13, 14, 15

*Center for Nat'l Sec. Studies v. U.S. Dep't of Justice,*
    331 F.3d 918 (D.C. Cir. 2003) ............................................................................ 11

*CIA v. Sims,*
    471 U.S. 159 (1985) .......................................................................................... 12

*City of Chicago v. U.S. Dep't of Treasury,*
    423 F.3d 777 (7th Cir. 2005) ......................................................................... 6, 15

*Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives,*
    139 F. Supp. 3d 287 (D.D.C. 2015) .................................................................... 13

*Grand Cent. P'ship, Inc. v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999) ............................................................................... 11

*Halpern v. Federal Bureau of Investigation,*
    181 F.3d 279 (2d Cir. 1999) ............................................................................... 11

*Higgins v. U.S. Dep't of Justice,*
    919 F. Supp. 2d 131 (D.D.C. 2013) .................................................................... 14

*Hudgins v. IRS,*
    620 F. Supp. 19 (D.D.C. 1985) ..................................................................... 17, 19

*Kissinger* v. *Reporters Comm. for Freedom of the Press*,
445 U.S. 136 (1980) .................................................................................... 17, 19

*New York Times Co. v. U.S. Dep't of Justice*,
872 F. Supp. 2d 309 (S.D.N.Y. 2012) .................................................................. 12

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) ............................................................................................. 11

*NLRB* v. *Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ............................................................................................. 17

*P.W. Arms, Inc. v. United States*,
No. C15-1990-JCC, 2017 WL 319250 (W.D. Wash. Jan. 23, 2017) ..................... 13

*Penn v. U.S. Dep't of Justice*,
No. S-10-2494, 2012 WL 761741 (E.D. Cal. Mar. 7, 2012) .................................. 15

*Reep v. U.S. Dep't of Justice*,
302 F. Supp. 3d 174 (D.D.C. 2018) ..................................................................... 13

*Smith v. ATF*,
No. 13-13079, 2014 WL 3565634 (E.D. Mich. July 18, 2014) .............................. 14

*Wilner v. National Security Agency*,
592 F.3d 60 (2d Cir. 2009) ............................................................................. 12, 15

**Federal Statutes**

5 U.S.C. § 552(a)(4)(B) ............................................................................... 11, 17

5 U.S.C. § 553(b)(3) ................................................................................... passim

Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, 117 Stat. 11 (2003) .............. 6

Consolidated Appropriations Act, 2004, Pub. L. No. 108–199, 118 Stat. 3 (2004) ...................... 6

Consolidated Appropriations Act, 2005, Pub. L. No. 108–447, 118 Stat. 2809 (2004) ................ 7

Consolidated Appropriations Act, 2008, Pub. L. No. 110–161, 121 Stat. 1844 (2007) ................ 8

Consolidated Appropriations Act, 2010, Pub. L. No. 111–117, 123 Stat. 3034 (2009) ................ 8

Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112–55, 125 Stat.
552 (2011) .................................................................................................. passim

Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112–10, 125 Stat. 38 (2011)..........................................................................................................8

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 (1968) ...................................1, 3, 6

Omnibus Appropriations Act, 2009, Pub. L. No. 111–8, 123 Stat. 524 (2009) ............................8

Science, State, Justice, Commerce, and Related Agencies Appropriations Act, 2006, Pub. L. No. 109–108, 119 Stat. 2290 (2005)...............................................................................................7

**Federal Rules**

Fed. R. Civ. P. 56.....................................................................................................................1, 19

**Other Authorities**

H.R. Rep. No. 107–575 (2002)........................................................................................................6

Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Everytown for Gun Safety Support Fund ("Plaintiff") commenced this FOIA action to compel ATF to release from its Firearms Tracing System database a wide-ranging collection of statistical data, aggregated on a nationwide and state-by-state basis, pertaining to firearms used in suicides or attempted suicides that were recovered by law enforcement and traced by ATF. The information sought by Plaintiff's FOIA request, however, is exempt from disclosure under Exemption 3 of FOIA, 5 U.S.C. § 553(b)(3), because it is protected by statute. In a series of appropriations bills from 2005 to the 2012, which apply broadly to "the current fiscal year and in each fiscal year thereafter," Congress unequivocally prohibited ATF from disclosing any such tracing data, and the courts have repeatedly upheld that prohibition against similar claims brought by FOIA requesters. Moreover, Plaintiff's request amounts to a demand that ATF create a customized and "unique data set to help conduct [its] analysis" of a suicidal person's access to firearms, Compl. ¶ 4, which conflicts with FOIA's mandate that an agency not be compelled to create new documents to satisfy a FOIA request. Accordingly, this Court should grant summary judgment in ATF's favor.

## BACKGROUND

### A.    The ATF's Firearms Trace System Database

ATF is a law enforcement agency within the U.S. Department of Justice. ATF is responsible for enforcement of federal firearms laws, including the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 (1968) (codified as amended at 18 U.S.C. §§ 921–930). *See*

Declaration of Charles J. Houser dated October 1, 2018 ("Houser Decl.") ¶¶ 5-6.[1]  The Gun

Control Act established a licensing system for persons or entities referred to as Federal Firearm

Licensees ("FFLs"), who are engaged in manufacturing, importing, dealing, and collecting

firearms, and are regulated by ATF.  *Id.* ¶ 6.  Pursuant to the Gun Control Act, the United States

Attorney General is authorized to administer firearms tracing.  *Id.* ¶ 7.  The Attorney General has

delegated ATF the sole federal agency authorized to trace firearms.  *Id.*

To carry out its firearms tracing functions, ATF maintains the Firearm Tracing System

database, which is a massive electronic database that serves to support criminal investigations by

federal, state, local, and foreign law enforcement agencies.  *Id.* ¶¶ 8-9.  The database is

maintained at ATF's National Tracing Center ("NTC").  *Id.* ¶ 8.  In response to requests from

law enforcement, the NTC provides ATF special agents and other law enforcement agencies with

Firearms Trace Result Reports commonly referred to as "trace data," as well as investigative

leads obtained from the traced firearm.  *Id.*

"Tracing" a firearm is the systematic tracking of a recovered firearm from its

manufacturer or importer, through its subsequent introduction into the distribution chain, in order

to identify an unlicensed purchaser.  *Id.* ¶ 9.  A firearm trace begins when the NTC receives a

request from a federal, state, local, or foreign law enforcement agency that has recovered a

firearm or suspects that a certain firearm has been used in a crime.  *Id.*  The ATF also requests

traces in connection with the investigations that the agency conducts itself.  *Id.*  Firearms for

which traces are requested typically have been recovered at a crime scene or from the possession

of a suspect, felon or other person who is prohibited from owning the firearm.  *Id.*  Law

---

[1] Pursuant to ATF's letter to the Court dated September 28, 2018 [ECF No. 20], ATF has filed an unsigned copy of this declaration with its motion papers, and will file a signed copy of this declaration on October 1, 2018.

enforcement officers working in an undercover capacity may also purchase traced firearms.  *Id*. To conduct a trace, the requesting agency must provide the NTC with information about the firearm, including the type of gun (*e.g*., pistol, revolver or shotgun), the manufacturer, the caliber, and the serial number of the gun.  *Id*. ¶ 10.

In a typical case, after receiving a trace request, NTC personnel will contact the manufacturer or importer to determine when and to whom the firearm in question was sold.  *Id*. When the NTC contacts an FFL manufacturer or importer requesting information about a particular gun or guns, ATF informs the licensee only about the firearm involved in the trace; the FFL is not informed of any circumstances relating to the alleged criminal conduct nor the identity of the law enforcement agency that recovered the firearm.  *Id*.  In most instances, the manufacturer or importer has sold the firearm to an FFL wholesaler.  *Id*. ¶ 11.  NTC personnel then contact the wholesaler to determine when and to whom the firearm in question was sold, usually to an FFL retailer.  *Id*.  The tracing process continues as long as records allow and is considered successful when ATF can identify the first retail purchaser (a non-FFL).  *Id*.  ATF's tracing process generally stops at the first retail purchaser because any subsequent disposition of the firearm by a non-FFL is not subject to Gun Control Act record-keeping or reporting requirements.  *Id*.  The NTC forwards the firearms tracing results directly to the requesting law enforcement agency.  *Id.* ¶ 13.

The "trace data" is maintained in the Firearms Tracing System, and includes the 8-digit identification number of the FFLs involved in the sale or transfer of the firearm, along with any information about the retail purchaser of the firearm.  *Id.* ¶ 12.  The Firearms Tracing System contains over 75 tables with a combined total of 800 columns/fields, not including subsystems and integrated or associated systems.  *Id.* ¶ 29.  The data elements related to firearms trace results

in the Firearms Trace System database can be grouped into six general categories: (i) information about the law enforcement agency requesting the trace, such as the agency's name, address, case number, and investigative notes provided by the agency; (ii) information provided by the requesting agency regarding its recovery of the firearm, such as the date and location where the traced firearm was taken into custody by the requesting agency; (iii) information about purchasers of the traced firearm; (iv) information about possessors of the traced firearm and any associates (*i.e.*, persons with the possessor of the firearm when the firearm comes into police custody), such as their names and addresses, driver's license information and social security numbers, and any related vehicle information; (v) information identifying each FFL that has sold the traced firearm; and (vi) information about the traced firearm, such as the manufacturer, importer, model, weapon type, caliber and serial number. *Id.*  In addition to these categories of information, the Firearms Trace System database includes close-out codes for each trace, including those related to the law enforcement and government agencies requesting the trace. *Id.*

## B.    Tracing Data and Statistics

ATF regularly prepares statistical reports utilizing trace data in the Firearms Tracing System database to provide the public and law enforcement agencies with insight into firearms recoveries. *Id.* ¶ 18.  These reports are prepared by ATF's Office of Strategic Intelligence and Information for each state on an annual basis, and for certain foreign jurisdictions where firearms were recovered and traced by ATF. *Id.*  The statistical trace data provided by ATF, including these reports, help domestic and international law enforcement agencies solve firearms crimes, detect firearms trafficking, and identify trends with respect to intrastate, interstate and international movement of crime guns. *Id.*  Of all the statistical reports prepared by ATF, the agency publishes a limited number of aggregate statistical reports that ATF believes will provide

helpful insights to the public without disclosing any law-enforcement or other sensitive material. *Id.* Those public reports are available on the agency's website at https://www.atf.gov/resource-center/data-statistics. *Id.*

The statistical reports are prepared and created by experienced specialists in ATF's Violent Crime Analysis Branch ("VCAB") who utilize their experience and skills to prepare these reports in an accurate and timely manner. *Id.* ¶ 19. VCAB provides ATF and other federal, state, local and international law enforcement agencies with crime gun, explosives, and arson intelligence information in statistical and visual formats. *Id.* VCAB also collects, analyzes and disseminates criminal intelligence information derived from various sources for the purpose of reducing violent crime and protecting the public. *Id.*

The data used to prepare each series of reports is extracted from the Firearms Tracing System and requires time-consuming and specialized queries pertinent to each series of reports. *Id.* ¶ 20. Subsequently, all the data is reviewed and analyzed using statistical software overseen by an ATF employee. *Id.* Part of the analysis requires specialists to interact with various members of the NTC to ensure that the data extracted from the Firearms Tracing System is valid and relevant. *Id.* Each data set also requires at least six levels of filtering, after which VCAB employees must undertake a time-consuming and detail-oriented process of evaluating the data and filling in gaps by making educated assumptions or performing research on missing fields. *Id.* After that analysis has been completed, the resulting statistics are inserted into the applicable software and a visual depiction of the data is created. *Id.* After that, each project is subjected to a multi-level review process to ensure the accuracy of the data and the format in which it is presented. *Id.* Furthermore, the analysts performing the work maintain working papers and notes for each report they create, which document the methodology behind the analysis and are

used by the reviewers as part of the validation process.  Overall, this is a time-consuming process

that requires skill and expertise at interpreting and evaluating trace data to create accurate and

responsive reports for public disclosure.  *Id.*

**C.**     **The Tiahrt Amendment's Prohibitions on the Release of Trace Data**

Since 2003, Congress has expressly prohibited ATF from disclosing firearm trace

information.  *Id.* ¶ 27.  The statutory provision prohibiting the disclosure of trace information is

often referred to as the "Tiahrt Amendment" after its sponsor, former U.S. Representative Todd

Tiahrt.  Section 644 of the Consolidated Appropriations Resolution of 2003 provided, in

pertinent part, that "[n]o funds appropriated under this Act or any other Act with respect to any

fiscal year shall be available to take any action based upon any provision of 5 U.S.C. § 552," *i.e.*,

FOIA, "with respect to records collected or maintained" pursuant to section 923(g)(7) of the Gun

Control Act, "or provided by" a law enforcement agency in connection with the tracing of a

firearm, "except that such records may continue to be disclosed to the extent and in the manner

that records so collected, maintained, or obtained have been disclosed" under FOIA before the

date of enactment.  Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, 117 Stat.

11, 473–474 (2003) ("Consolidated Appropriations Resolution of 2003");[2] *see also City of*

*Chicago v. U.S. Dep't of Treasury*, 423 F.3d 777, 779 (7th Cir. 2005) (noting that the

Consolidated Appropriations Resolution of 2003 "contained a rider prohibiting the use of

appropriated funds" to respond to FOIA requests seeking information from the Firearms Tracing

System database).

In explaining the need for the legislation, the House Report expressed the Appropriations

Committee's concern that release under the FOIA of "certain law enforcement databases . . . on a

---

[2] The 2004 version of the Tiahrt Amendment contained a near-identical prohibition.  *See* Consolidated Appropriations Act, 2004, Pub. L. No. 108–199, 118 Stat. 3, 53 (2004).

comprehensive basis . . . would not only pose a risk to law enforcement and homeland security, but also to the privacy of innocent citizens."  H.R. Rep. No. 107–575, at 20 (2002).  The Committee expressed additional concerns that "information collected and maintained by ATF related to ongoing investigations of firearms . . . offenses could be released, potentially compromising those cases," therefore triggering "a greater concern . . . that such release could be accomplished on a comprehensive basis, making all such data available to the public."  *Id.*

The prohibition on the release of trace data changed substantially in the Consolidated Appropriations Act, 2005, Pub. L. No. 108–447, 118 Stat. 2809, 2859–60 (2004) ("2005 Appropriations Act").   That act provided, in relevant part:

> That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, *and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives* to enforce the provisions of that chapter, or a review of such an action or proceeding; . . .

118 Stat. 2809, 2859–60 (emphasis added).  Over the years, the Tiahrt Amendment has undergone some changes, including the addition of some exceptions and clarifications, but the prohibition on public disclosure of firearms tracing data has remained constant since 2005.  *See* Science, State, Justice, Commerce, and Related Agencies Appropriations

Act, 2006, Pub. L. No. 109–108, 119 Stat. 2290, 2295–96 (2005) ("2006 Appropriations

Act");[3] Consolidated Appropriations Act, 2008, Pub. L. No. 110–161, 121 Stat. 1844,

1903–04 (2007) ("2008 Appropriations Act"); Omnibus Appropriations Act, 2009, Pub.

L. No. 111–8, 123 Stat. 524, 575 (2009) ("2009 Appropriations Act"); Consolidated

Appropriations Act, 2010, Pub. L. No. 111–117, 123 Stat. 3034, 3128–29 (2009) ("2010

Appropriations Act").[4]

The most recent iteration of the Tiahrt Amendment is found in the Consolidated and

Further Continuing Appropriations Act, 2012, Pub. L. No. 112–55, 125 Stat. 552 (2011) ("2012

Appropriations Act"); *see also* Houser Decl. ¶ 27.  The 2012 Appropriations Act provides:

> That, during the current fiscal year and in each fiscal year thereafter, no funds
> appropriated under this or any other Act may be used to disclose part or all of the
> contents of the Firearms Trace System database maintained by the National Trace
> Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . ; and all
> such data shall be immune from legal process, shall not be subject to subpoena or
> other discovery, shall be inadmissible in evidence, and shall not be used, relied
> on, or disclosed in any manner, nor shall testimony or other evidence be permitted
> based on the data, in a civil action in any State (including the District of
> Columbia) or Federal court or in an administrative proceeding other than a
> proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and
> Explosives to enforce the provisions of chapter 44 of such title, or a review of
> such an action or proceeding; . . .

125 Stat. 552, 609–610.  As relevant here, the 2012 Appropriations Act contains the following

proviso ("Subpart C") to the prohibition on releasing tracing data, which first appeared in the

2008 Appropriations Act, *see* 121 Stat. at 1904:

---

[3] The 2007 prohibition on the release of trace data was unchanged from the language in the 2006 Appropriations Act, because the 2007 statute was a year-end continuing resolution.  *See* Division B—Continuing Appropriations Resolution, 2007, Pub. L. No. 110–5, 120 Stat. 1311, 121 Stat. 8, 44 (2007).

[4] The 2011 prohibition on the release of trace data was unchanged from the language in the 2010 Appropriations Act, because the 2011 statute was a year-end continuing resolution.  *See* Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112–10, 125 Stat. 38, 102 (2011).

(C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations . . . ."

125 Stat. at 610; *see also* Houser Decl. ¶ 28.

**D.      Plaintiff's FOIA Request**

On or about December 14, 2016, Plaintiff submitted a FOIA request to ATF for certain

records generally related to traces of firearms used in suicide ("FOIA Request").  Houser Decl. ¶

22 & Ex. A.  Plaintiff requested:

i.      Nationwide, the number of each firearm type (pistol, revolver, rifle, shotgun, other) that were used in a completed suicide and successfully traced in 2012 and in 2013;

ii.      Nationwide, the number of each firearm type (pistol, revolver, rifle, shotgun, other) that were used in an attempted suicide and successfully traced in 2012 and in 2013;

iii.      For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013.

iv.      For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013 that were in the possession of the original buyer.

v.      For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013 that were in the possession of someone other than the original buyer.

vi.      For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013 that were originally purchased in the same state in which they were recovered.

vii.      For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013 that were traced less than 3 months after first purchase; that were traced between 6 and 12 months after first purchase; that were traced between 1 and 2 years after first purchase; that were traced between 2 and 3 years after first purchase; and that were traced more than 3 years after first purchase.

viii.      For each state, the number of guns that were used in an attempted suicide

and successfully traced in 2012 and in 2013.

ix.   For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013 that were in possession of the original buyer.

x.   For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013 that were in possession of someone other than the original buyer.

xi.   For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013 that were originally purchased in the same state in which they were recovered.

xii.   For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013 that were traced less than 3 months after first purchase; that were traced between 3 and 6 months after first purchase; that were traced between 6 and 12 months after first purchase; that were traced between 1 and 2 years after first purchase; that were traced between 2 and 3 years after first purchase; and that were traced more than 3 years after first purchase.

*Id.* ATF denied Plaintiff's FOIA Request by letter dated April 6, 2017, on the grounds that the FOIA Request sought material that was exempt from disclosure pursuant to Exemption (b)(3) of the FOIA and the 2012 Appropriations Act. *Id.* ¶ 23 & Ex. B.[5] In June 2017, Plaintiff appealed ATF's final determination of its FOIA Request to the Department of Justice, Office of Information Policy ("OIP"). *Id.* ¶ 24. By letter dated July 6, 2017, OIP upheld ATF's denial of Plaintiff's FOIA Request. *Id.*

---

[5] ATF's April 6, 2017 denial letter stated that all twelve categories in Plaintiffs' FOIA Request were protected by Exemption 3. *See* Houser Decl. Ex. B. As clarified in the Houser Declaration, however, ATF subsequently determined that two of the twelve requested categories in the FOIA Request—categories (iii) and (viii)—are publicly available on ATF's website at https://www.atf.gov/resource-center/data-statistics. *Id.* ¶¶ 25, 30 & Ex. C. Accordingly, ATF is no longer asserting Exemption 3 as to those two categories.

**ARGUMENT**

**THE COURT SHOULD GRANT SUMMARY JUDGMENT TO ATF BECAUSE THE AGENCY HAS DEMONSTRATED THAT THE WITHHELD INFORMATION IS EXEMPT FROM DISCLOSURE UNDER FOIA AND PLAINTIFF'S FOIA REQUEST IMPROPERLY SEEKS CREATION OF RECORDS**

**A.      Summary Judgment Standard**

FOIA was enacted to "ensure an informed citizenry, . . . needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, FOIA exempts nine categories of information from disclosure, while providing that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt under this subsection." *Id.* § 552(b).  FOIA thus "calls for broad disclosure of [g]overnment records, while maintaining a balance between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 64 (2d Cir. 2008) (citations and internal quotation marks omitted); *Center for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is the procedural vehicle by which most FOIA actions are resolved.  *See, e.g.*, *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).  "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Id.* (footnote omitted); *see also Halpern v. Federal Bureau of Investigation*, 181 F.3d 279, 291 (2d Cir. 1999) (same).  Although this Court reviews *de novo* the agency's determination that requested information falls within a FOIA exemption, *see* 5 U.S.C. § 552(a)(4)(B); *Halpern*, 181 F.3d at 287, the declarations submitted by the agency in support of its determination are "accorded a

presumption of good faith," *Carney*, 19 F.3d at 812 (citation and internal quotation marks

omitted). "Ultimately, an agency's justification for invoking a FOIA exception is sufficient if it

appears logical or plausible." *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309,

315 (S.D.N.Y. 2012) (quoting *Wilner v. National Security Agency*, 592 F.3d 60, 73 (2d Cir.

2009)).

**B.      The Tracing Data Sought by Plaintiff is Exempt From Disclosure Under FOIA
          Exemption 3**

ATF properly invoked FOIA Exemption 3, which exempts from disclosure records that

are:

> Specifically exempted from disclosure by statute . . . if that statute (A)(i) requires
> that the matters be withheld from the public in such a manner as to leave no
> discretion on the issue; or (A)(ii) establishes particular criteria for withholding or
> refers to particular types of matters to be withheld; and (B) if enacted after the
> date of enactment of the Open FOIA Act of 2009, specifically cites to this
> paragraph.

5 U.S.C. § 552(b)(3).  Under an Exemption 3 analysis, the Court need only determine whether

the claimed statute is an exemption statute under FOIA, and whether the withheld material falls

within its scope.  *Wilner*, 592 F.3d at 72.  As the Second Circuit has explained, "Exemption 3

differs from other FOIA exemptions in that its applicability depends less on the detailed factual

contents of specific documents; the sole issue for decision is the existence of a relevant statute

and the inclusion of withheld material within the statute's coverage."  *Id.*; *see also ACLU v.

Department of Justice*, 681 F.3d 61 (2d Cir. 2012).

The 2012 Consolidated Appropriations Act plainly prohibits disclosure of "part or all of

the contents of the Firearms Trace System database maintained by the National Trace Center of

the Bureau of Alcohol, Tobacco, Firearms and Explosives," and provides that "all such data shall

be immune from legal process, [and] shall not be subject to subpoena or other discovery

. . . ."  125 Stat. 552, 609–610.  This same prohibition on disclosure has appeared in annual

appropriations since 2005. *See infra* at 7–9. That prohibition is ongoing and, pursuant to the

Act, applies "during the current fiscal year and in each fiscal year thereafter." 125 Stat. at 609.

There is no question that responding to Plaintiff's FOIA Request would require disclosure of part

of the contents of the Firearms Trace System database maintained by ATF. *See* Houser Decl.

¶¶ 29–33.

Courts have consistently held that Exemption 3 protects ATF firearms trace data from

disclosure under FOIA. *See, e.g., Center for Investigative Reporting v. United States Dep't of*

*Justice*, Case No. 17-cv-06557-JSC, 2018 WL 3368884, at *2, 9 (N.D. Cal. July 10, 2018)

(plaintiff's FOIA request for "aggregate data reflecting the total number of firearms traced back

to law enforcement ownership since 2006," was properly withheld under Exemption 3 because

the "the Tiahrt Amendment is a 'statute of exemption within the meaning of Exemption 3'" and

"there is no debate that Plaintiff's request seeks information from the [Firearms Tracing System]

database") (citation omitted)); *Reep v. U.S. Dep't of Justice*, 302 F. Supp. 3d 174, 183 (D.D.C.

2018) (ATF properly withheld under Exemption 3 "a weapon's trace summary that was

generated out of the ATF Firearms Tracing System database"); *P.W. Arms, Inc. v. United States*,

No. C15-1990-JCC, 2017 WL 319250, at *4 (W.D. Wash. Jan. 23, 2017) ("[T]he Court . . .

adopts the holding of the vast majority of cases addressing this issue: 'disclosure prohibitions set

forth by Congress in the 2005 and 2008 appropriations bills are still effective prospectively and

beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the

intent to repeal or modify them.'" (citation omitted)); *Fowlkes v. Bureau of Alcohol, Tobacco,*

*Firearms and Explosives*, 139 F. Supp. 3d 287, 291–92 (D.D.C. 2015) (ATF's decision to

withhold trace information pursuant to Exemption 3 was "proper"); *Abdeljabbar v. Bureau of*

*Alcohol, Tobacco, Firearms and Explosives*, 74 F. Supp. 3d 158, 176 (D.D.C. 2014) (ATF

properly withheld trace information related to plaintiff's criminal investigation under Exemption 3); *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 145 (D.D.C. 2013) (withholding of trace information pursuant to Exemption 3 was proper because "[t]he appropriations legislation on which [the ATF] relies explicitly bars disclosure of information 'maintained by the National Trace Center . . . .'" (citation omitted)).  Because ATF is statutorily prohibited from using "part or all of the contents of the Firearms Trace System database" to respond to the FOIA Request, Plaintiff's request to compel disclosure should be denied and judgment entered in ATF's favor.

While the versions of the Tiahrt Amendment that were passed in 2010 and 2012 were "enacted after the date of enactment of the Open FOIA Act of 2009," and do not "specifically cite to" 5 U.S.C. § 552(b)(3) as currently required, as courts have recognized, "the Consolidated Appropriations Act of 2008 does satisfy that subsection and . . . provides a *permanent prohibition* against disclosure that is not limited to the fiscal year of the appropriated funds granted therein."  *Abdeljabbar*, 74 F. Supp. 3d at 174–75 (quoting *Smith v. ATF*, No. 13-13079, 2014 WL 3565634, at *5 n.2 (E.D. Mich. July 18, 2014)); *see also Center for Investigative Reporting*, 2018 WL 3368884, at *8 (noting that "the majority of courts that have addressed this exact argument" have "concluded that 'disclosure prohibitions set forth by Congress in the 2005 and 2008 [versions of the Tiahrt Amendment] are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them" (alteration in original)); *Smith*, 2014 WL 3565634, at *5 n.2 (although Consolidated Appropriations Act of 2010 relied upon by ATF did not cite to the Exemption 3 paragraph, "this issue need not be addressed here" because the Consolidated Appropriations Act of 2008 "provides a permanent prohibition against disclosure that is not limited to the fiscal year of the appropriated funds granted therein"); *Penn v. U.S. Dep't of Justice*, No. S-10-2494, 2012

WL 761741, at *6 n.2 (E.D. Cal. Mar. 7, 2012) ("Although it does not appear that the 2010

[Tiahrt Amendment] cites to § 552(b)(3), and although it appears to have been enacted [after the

OPEN FOIA Act of 2009], because the 2005 and 2008 appropriations bills also apply here, and

were enacted prior to the OPEN FOIA Act of 2009, that issue need not be addressed"), *R.& R.*

*adopted,* 2012 WL 1131537 (E.D. Cal. Mar. 28, 2012).

Plaintiff asserts that its FOIA Request falls under Subpart C of the 2012 Appropriations

Act, which permits "the publication of annual statistical reports on products regulated by the

[ATF] . . . or statistical aggregate data regarding firearms traffickers and trafficking channels, or

firearms misuse, felons, and trafficking investigations[.]"  Compl. ¶¶ 26–27, 33, 38 (quoting 125

Stat. at 610).  Subpart C permits ATF to publish the annual statistical reports on its website, *see*

*generally*, "ATF—Data & Statistics," *available at* https://www.atf.gov/resource-center/data-

statistics; *see also* Houser Decl. ¶ 18, but it does not contemplate or permit the broad release of

trace data in response to FOIA requests.  Plaintiff's reading of Subpart C would completely

reverse the "change in substantive FOIA law" effected by the 2005 Appropriations Act that was

designed to "exempt[] from disclosure data previously available to the public under FOIA."  *City*

*of Chicago*, 423 F.3d at 781; *see also Center for Investigative Reporting*, 2018 WL 3368884, at

*8 (holding that Subpart C did not permit disclosure of under FOIA of aggregate data reflecting

total number of firearms traced back to law enforcement ownership since 2006).

Under Exemption 3, in conjunction with the Tiahrt Amendment, the Government need

not show that there would be any harm from disclosure.  *Wilner*, 592 F.3d at 72–73; *ACLU*, 681

F.3d at 72-73.  As explained in the Houser Declaration, however, it would raise significant law

enforcement concerns if the general public were freely granted access to Firearms Systems

Tracing data through FOIA or otherwise.  The Firearm Tracing System database contains

information associated with each of the hundreds of thousands of firearm traces conducted by

ATF each year for more than 23,000 law enforcement agencies.  Houser Decl. ¶ 15.  In fiscal

year 2018 alone, ATF processed over 440,000 trace requests, the vast majority of which came

from other law enforcement agencies.  *Id.*  As of September 26, 2018, the database contained

data associated with 7 million traces.  *Id.*  Law enforcement agencies, including ATF, use the

trace data to link a suspect to a firearm-related criminal investigation, to identify any potential

firearms traffickers, and to detect patterns in the sources and kinds of firearms that are used in a

crime. *Id.* ¶ 12.

Accordingly, as explained in the Houser Declaration, ATF exercises caution in disclosing

law enforcement data from the Firearms Tracing System to members of the public.  *Id.* ¶ 16.

This is because many of the over 7 million trace results in the Firearms Tracing System relate to

open investigations.  *Id.*  Federal, state, local, and foreign law enforcement agencies are not

required to advise ATF of the status of their investigations, nor does NTC track the status of

investigations by law enforcement agencies.  *Id.*  ATF is not informed when the requesting

agency's criminal investigation has been concluded.  *Id.*  Moreover, closed traces do not

necessarily stay closed, and about 40 traces per day are re-opened when law enforcement

agencies or ATF develop subsequent information that allows the NTC to modify the Firearms

Trace Result Reports with additional investigative leads.  *Id.*  Multiple Firearms Trace Results

Reports can also reveal a firearms trafficker, if firearms recovered in different crimes by

different law enforcement agencies were purchased by the same individual.  *Id.*  Federal agencies

also submit trace requests that are very sensitive and handled in strictest confidence because the

requests may be related to issues of national security, such as terrorism and the movement of

arms abroad.  *Id.* ¶ 17.  Because the firearms tracing regime depends on the requesting agency's

expectation of confidentiality and reliance on ATF's nondisclosure policy to maintain confidentiality, the open-ended release of "trace data" under FOIA not only could compromise investigative and intelligence operations and endanger undercover operations, but also could undermine confidence in the NTC and the entire tracing process.  *Id.*

## C.    Responding to Plaintiff's FOIA Request Would Require ATF to Create New Statistical Reports, Which Cannot be Compelled Under FOIA

FOIA does not permit courts to compel an agency to produce anything other than responsive, non-exempt records.  *See* 5 U.S.C. §  552(a)(4)(B) (district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld" from plaintiff).  Once an agency establishes that information falls within a FOIA exemption, it cannot be compelled to produce that information, even in an altered or modified form.  *See, e.g., Kissinger* v. *Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("The Act does not obligate agencies to create or retain documents."); *NLRB* v. *Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975) (FOIA "only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create"); *ACLU*, 681 F.3d at 71 ("if the Government altered or modified the [requested document] . . . the Government would effectively be 'creating' documents— something FOIA does not obligate agencies to do"); *Carson v. U.S. Office of Special Counsel*, 534 F. Supp. 2d  99, 103 (D.D.C. 2008) ("[P]laintiffs' request that this Court order the defendant to create records or to render opinions . . . is not cognizable under the FOIA.").  FOIA does not require agencies to "produce or create explanatory material," *NLRB,* 421 U.S. at 161–62, or "answer questions," *Hudgins v. IRS,* 620 F. Supp. 19, 21 (D.D.C. 1985).

Plaintiff's FOIA Request for statistical summaries related to traces of firearms involved in suicides in 2012 and 2013, *see* Houser Decl. Ex. A, would require ATF to create new records

in the form of customized statistical reports compiled from data in the Firearms Trace System database. *Id.* ¶ 30. Although ATF prepares a number of statistical reports every year, *see generally*, "ATF—Data & Statistics," *available at* https://www.atf.gov/resource-center/data-statistics; *see also* Houser Decl. ¶ 18, to date, ATF has never prepared any annualized reports summarizing the specific statistical summaries sought in items (i), (ii), (iv) through (vii), or (ix) through (xii) of Plaintiff's FOIA Request. *Id.* ¶ 30.

The work entailed in responding to the FOIA request underscores that Plaintiff is seeking the creation of new records. In order to respond to the FOIA Request, which seeks statistical data for the years 2012 and 2013, the requested data pulls for each year would need to be assigned to two full-time VCAB analysts who would be tasked with creating new summaries. *Id.* The process would entail: a one-hour query of the Firearms Tracing System for the requested data; at least four dedicated working days per analyst to clean up the raw data pulled from the data queries; conducting comparative analyses of possessor and purchaser information, which is a time-consuming process depending on the comparative methodology used; and data product review and approval by a head analyst and the Chief of VCAB. *Id.* In total, ATF has estimated that generating customized statistical summaries for the ten numbered items in the FOIA Request will take at least 160 hours of dedicated analyst and supervisory review time. *Id.* Moreover, this estimate assumes that the two analysts assigned to the FOIA Request have no other time-sensitive and high-priority data requests from ATF's 25 Field Divisions nationwide and ATF's Office of Field Operations, among others, and are not covering for any of the remaining seven VCAB analysts who are unavailable due to scheduled leave or sick leave. *Id.* Because generating and presenting accurate statistical data from the Firearms Tracing System is a time-consuming process requiring the efforts of experienced specialists at the ATF, compelling ATF

to run searches on the Firearms Tracing System to produce customized statistical data sought by any FOIA requestor would impose an additional and significant burden on the agency and would divert resources currently used to prepare and publish reports of statistical data.  *Id.*  FOIA simply does not require agencies to undertake that burden.

This is not a request that ATF search the Firearms Trace System database to extract and release an existing agency record—which is already prohibited under Exemption 3—and produce it in unaltered form.  Rather, Plaintiff is impermissibly using FOIA in an effort to compel ATF to create a new statistical report with annualized data of specific interest to Plaintiff.  As much as Plaintiff wants to "better understand where and when people attempting, or dying by, suicide obtain their firearms," *see* Compl. ¶  4, ATF is not required to "answer questions disguised as a FOIA request," *Hudgins*, 620 F. Supp. at 21, nor to "conduct research on behalf of private citizens."  *Kissinger*, 445 U.S. at 159, n.2.

## CONCLUSION

For the foregoing reasons, defendant ATF respectfully requests that the Court grant

summary judgment in its favor, as set out above, pursuant to Rule 56 of the Federal Rules of

Civil Procedure.

Dated: September 28, 2018
      New York, New York

                                            GEOFFREY S. BERMAN
                                            United States Attorney for the
                                            Southern District of New York
                                            *Attorney for Defendant ATF*

By:      */s/ Tomoko Onozawa*
                                            TOMOKO ONOZAWA
                                            Assistant United States Attorney
                                            86 Chambers Street, 3rd Floor
                                            New York, New York 10007
                                            Tel.:   (212) 637-2721
                                            Fax:   (212) 637-2686
                                            Email: tomoko.onozawa@usdoj.gov