UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 1 9 2019

---

Everytown for Gun Safety Support Fund,

Plaintiff,

—v—

Bureau of Alcohol, Tobacco, Firearms and
Explosives,

Defendant.

---

18-cv-2296 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Everytown for Gun Safety Support Fund ("Everytown") brought this Freedom of
Information Act ("FOIA") action to compel Defendant Bureau of Alcohol, Tobacco, Firearms,
and Explosives ("ATF") to release statistical data from its Firearms Tracing System database.
Now before the Court are the parties' cross-motions for summary judgment. For the reasons that
follow, the Court DENIES Defendant's motion and GRANTS Plaintiff's.

## I. BACKGROUND

Plaintiff Everytown seeks statistical data from the ATF's Firearms Tracing System
database pertaining to firearms used in suicides or attempted suicides that were recovered by law
enforcement and traced by ATF. Below, the Court summarizes Everytown's request and ATF's
response. The undisputed facts described here are drawn from the parties' submissions,
including the agency affidavit submitted by ATF, which is accorded a presumption of good faith
for purposes of these summary judgment motions. *See Carney v. U.S. Dep't of Justice*, 19 F.3d
807, 812 (2d Cir. 1994).

Below, the Court also explains the statutory and procedural background relevant to both motions.

## A.    The FOIA Request

ATF's Firearms Tracing System database houses every law-enforcement-requested record of an attempt to track a weapon from its manufacturer or importer into the distribution chain, through purchases made in the distribution chain, until ATF can identify the first retail purchaser. Houser Decl., Dkt. No. 21 ¶¶ 8-9. Trace searches are generally conducted on firearms recovered at a crime scene or from the possession of a person prohibited from owning the firearm. *Id.* ¶ 9. The database codes these trace searches by a variety of searchable fields. *Id.* ¶ 29.

On December 14, 2016, Everytown submitted a FOIA request to ATF seeking records related to traces of firearms used in suicide across several variables, including the length of time between purchase and use; the type of gun used; the state of use relative to state of purchase; and whether the user was the individual buyer. Everytown FOIA Request, Dkt. No. 1-1. In relevant part, this was the FOIA request:

> We respectfully request that ATF provide us with records containing aggregate trace data that document the following:
>
> i.      Nationwide, the number of each firearm type (pistol, revolver, rifle, shotgun, other) that were used in a completed suicide and successfully traced in 2012 and in 2013;
> ii.     Nationwide, the number of each firearm type (pistol, revolver, rifle, shotgun, other) that were used in an attempted suicide and successfully traced in 2012 and in 2013;
> iii.    For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013;
> iv.     For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013 that were in the possession of the original buyer.

2

v.      For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013 that were in the possession of someone other than the original buyer.

vi.     For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013 that that were originally purchased in the same state in which they were recovered.

vii.    For each state, the number of guns that were used in a completed suicide and successfully traced in 2012 and in 2013 that were traced less than 3 months after first purchase; that were traced between 3 and 6 months after first purchase; that were traced between 6 and 12 months after first purchase; that were traced between 1 and 2 years after first purchase; that were traced between 2 and 3 years after first purchase; and that were traced more than 3 years after first purchase.

viii.   For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013.

ix.     For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013 that were in the possession of the original buyer.

x.      For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013 that were in the possession of someone other than the original buyer.

xi.     For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013 that that were originally purchased in the same state in which they were recovered.

xii.    For each state, the number of guns that were used in an attempted suicide and successfully traced in 2012 and in 2013 that were traced less than 3 months after first purchase; that were traced between 3 and 6 months after first purchase; that were traced between 6 and 12 months after first purchase; that were traced between 1 and 2 years after first purchase; that were traced between 2 and 3 years after first purchase; and that were traced more than 3 years after first purchase.

*Id.* at 3-4.

ATF rejected Everytown's request on the basis that the above-requested documents were exempt from disclosure pursuant to Exemption (b)(3), FOIA's statutory exemption. The Department of Justice's Office of Information Policy upheld ATF's determination. It later clarified that two of the requested categories—(iii) and (viii)—were publicly available on ATF's website, and accordingly no longer asserts Exemption 3 as to those two categories. Houser Decl. ¶¶ 25, 30 & Ex. C. This action concerns the remainder.

## B.    Statutory Background

Three statutes are relevant to the parties' cross-motions: the E-FOIA Amendments, the

OPEN FOIA Act of 2009, and the so-called Tiahrt Rider.  The Court summarizes each below.

### 1.    The E-FOIA Amendments and the OPEN FOIA Act

The present motions implicate two recent changes to substantive FOIA law: the

Electronic Freedom of Information Act Amendments of 1996 (the "E-FOIA Amendments"), Pub.

L. No. 104-231, 110 Stat. 3048 (1996); and the OPEN FOIA Act of 2009, Pub. L. No. 111-83,

§ 564, 123 Stat. 2142, 2184 (2009).

The E-FOIA Amendments revised various FOIA provisions to accommodate the

increased use of computer technology in managing agency business.  For example, the E-FOIA

Amendments altered FOIA's definition of "search" and agency "record" to specifically address

automatic review of electronic files and required courts to "accord substantial weight" to agency

affidavits concerning the "technical feasibility" of providing records in the requested format. *See*

5 U.S.C. §§ 552(a)(3)(B), (C), & (D); *id.* § 552(a)(4)(B); *id.* § 552(f)(2)(A).

The OPEN FOIA Act of 2009 substantively altered the third exemption agencies may

raise in response to public records requests.  Exemption 3 previously allowed agencies to assert

an exemption for "matters that are . . .  specifically exempted from disclosure by statute . . . if

that statute:

> (i) requires that the matters be withheld from the public in such a manner as to leave
> no discretion on the issue; or
>
> (ii) establishes particular criteria for withholding or refers to particular types of
> matters to be withheld . . . .

5 U.S.C. § 552(b)(3)(A).  With the OPEN FOIA Act of 2009, Congress added the following

subsection, which added the further requirement that a qualifying statute:

if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

*Id.* § 552(b)(3)(B). Accordingly, to enact a statute that qualifies as an Exemption 3 statute following the enactment of OPEN FOIA, Congress must include a clear statement identifying section 552(b)(3).

## 2. The Tiahrt Rider

Between 2003 and 2012, Congress attached to each of its appropriations resolutions and continuing resolutions a provision known as the Tiahrt Rider or Tiahrt Amendment. *See* Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, § 644, 117 Stat. 11, 473-74 (2003) ("2003 Rider"); Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859-60 (2004) ("2005 Rider"); Science, State, Justice, Commerce, and Related Agencies Appropriations Act, 2006, Pub. L. No. 109-108, 119 Stat. 2290, 2295-96 (2005) ("2006 Rider"); Revised Continuing Appropriations Resolution, 2007, Pub. L. No. 110-5, § 20928, 121 Stat. 8, 44 (2007) ("2007 Provision"); Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903-04 (2007) ("2008 Rider"); Consolidated Appropriations Act, 2010, Pub.L. No. 111-117, 123 Stat. 3034, 3128-29 (2009) ("2010 Rider"); Department of Defense and Full Year Continuing Appropriations Act, 2011, Pub. L. No. 112-10, 125 Stat. 38, 102 (2011) ("2011 Provision"); Consolidated and Further Continuing Appropriations Act, Pub. L. No. 112-55, 125 Stat. 552, 609-10 (2011) ("2012 Rider").

In varying forms over time, the Tiahrt Rider has limited the use of appropriated funds to disclose part or all of the contents of the Firearms Trace System database. For example, the 2003 Rider provided that "[n]o funds appropriated under this Act or any other Act with respect to any fiscal year shall be available to take any action based upon any provision of [FOIA] with respect to records collected or maintained pursuant to [the statutes creating the Firearms Tracing

5

System database], except that such records may continue to be disclosed to the extent and in the manner that records so collected, maintained ,or obtained have been disclosed under [FOIA]" prior to the Rider's enactment. The 2005 Rider, in contrast, provided that "[n]o funds appropriated under this or any other Act may be used to disclose to the public the contents or any portion thereof of any information required to be kept by [the statutes creating the Firearms Tracing System database]." The 2006 Rider altered the language of the provision again, requiring that "[n]o funds appropriated . . . may be used to disclose [ATF trace data] to anyone other than a . . . law enforcement agency or a prosecutor . . . solely for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency . . . and not for use in any civil action . . . and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery."

Although Congress never expressly repealed earlier iterations of the Tiahrt Rider, over the course of the following seven years, Congress continued to enact new versions of the Rider. In some years, the newly enacted text reflected minor revisions from the previous year, while in other years Congress added or subtracted whole provisions. *Compare* 2012 Rider *with* 2010 Rider *and* 2008 Rider. Congress has never simply amended the existing provision, but rather has continually reenacted the entire provision with varying levels of changes from year to year. The currently operative iteration of the Tiahrt Rider is the 2012 Rider. As discussed below, that provision does not contain a citation to section 552(b)(3) of the 2009 OPEN FOIA Act.

### C. Procedural Background

Everytown submitted its FOIA request on December 14, 2016. *See* Everytown FOIA Request. ATF rejected the request on April 6, 2017. *See* ATF Response, Dkt. No. 1-2.

Everytown appealed this denial in June 2017, and the Office of Information Policy upheld ATF's determination on July 6, 2017 (although Everytown received the determination letter on January 30, 2018). *See* OIP Decision, Dkt. No. 1-3. On March 15, 2018, Everytown commenced this action pursuant to 5 U.S.C. § 552(a)(4)(B) asking this Court to enjoin ATF from withholding agency records and to order the production of records improperly withheld. Dkt. No. 1.

Pursuant to a briefing schedule approved by the Court, ATF filed its motion for summary judgment on September 28, 2018. Dkt. No. 17. Everytown filed its response and cross-motion for summary judgment on November 2, 2018. Dkt. No 24.[1] Both motions were fully briefed. Dkt. Nos. 26, 32. Oral argument was held on August 12, 2019.

## II.     STANDARD OF REVIEW

The Freedom of Information Act entitles members of the public "to have access to any record maintained by a federal agency, unless that record is exempt from disclosure." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994). Federal courts review agency assertions that records are exempt from disclosure *de novo*. *Id.* Upon such review, the burden of proof rests with "[t]he agency asserting the exemption," with all doubts as to the applicability of the exemption resolved in favor of disclosure. *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).

FOIA actions challenging agency exemption determinations are typically resolved on summary judgment. *See Adamowicz v. IRS*, 552 F. Supp. 2d 355, 360 (S.D.N.Y. 2008). As a general matter, a court may not grant summary judgment unless the parties' submissions, taken together, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, "the district court may forgo discovery and award summary judgment [for the defending agency] on the basis of

---

[1] Everytown later re-filed its motion papers to correct an ECF filing error. *See* Dkt. No. 29.

affidavits" or declarations that are sufficient to sustain the agency's burden of proof. *Carney*, 19 F.3d at 812 (quotation omitted). Because such affidavits or declarations are "accorded a presumption of good faith," they meet this standard if, on their face, they "supply[ ] facts indicating that the agency has conducted a thorough search and given reasonably detailed explanations why any withheld documents fall within an exemption." *Id.*; *see also ACLU v. U.S. Dep't of Defense*, 901 F.3d 125, 133 (2d Cir. 2018), ("Summary judgment is appropriate where the agency declarations describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith.") (quotation omitted).

Conversely, "[s]ummary judgment in favor of the FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *NRDC v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 398 (S.D.N.Y. 2014) (quotations omitted). If the agency defendant fails to meet its burden of showing that the requested information falls under an exemption or may otherwise be withheld, the court may grant summary judgment. *See id.* at 406; *Schladetsch v. Dep't of Hous. & Urban Development*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. 2000) ("[I]f the [agency] affidavits do not meet this standard, not only is summary judgment not appropriate in favor of the government, but such remedy may well be called for, as a matter of law, for those persons seeking the information.") (quotation omitted).

## III.  ANALYSIS

ATF articulates two primary bases for rejecting Everytown's FOIA request. First, ATF argues that the information sought is exempt from disclosure under Exemption 3, FOIA's

statutory exemption. Second, ATF maintains that Everytown's request falls outside the scope of

its FOIA disclosure obligation because responding to the request would require ATF to create an

agency record. The Court disagrees on both points, and accordingly grants summary judgment

for Everytown.[2]

## A.    ATF Has Not Identified a Valid Exemption Statute

At first blush, the analysis is simple. Under FOIA Exemption 3, as amended in 2009 by

the OPEN FOIA Act, agencies may withhold information "specifically exempted from disclosure

by statute," so long as the statute:

> (A)(i) requires that the matters be withheld from the public in such a manner as to
> leave no discretion on the issue; or (ii) establishes particular criteria for withholding
> or refers to particular types of matters to be withheld; and

> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009,
> specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

Thus, pursuant to the unambiguous text of subsection (B), any effort by Congress after

2009 to enact legislation statutorily exempting matters from FOIA disclosure *must* include

express citation to section 552(b)(3). Here, the potential statutory bar to disclosure is the current

provision of the Tiahrt Rider, which was passed in 2012—three years after the 2009 OPEN

FOIA Act. Yet, the 2012 Tiahrt Rider contains no specific citation to section 552(b)(3).

Without that, the 2012 Tiahrt Rider cannot qualify as an Exemption 3 statute.

In an effort to complicate this simple application of the plain text of the 2009 OPEN

FOIA Act, ATF argues that the pre-2009 versions of the Tiahrt Rider remain in effect. ATF Br.,

---

[2] Everytown also argues that, even if one or all of the Tiahrt Riders qualify as valid exemption statutes, the 2012 Rider's allowance for "publication . . . of statistical aggregate data regarding . . . firearms misuse, felons, and trafficking investigations" permits disclosure of the information sought by its disclosure request. Everytown Br. at 14–18; Everytown Reply at 4–6. Because the Court concludes that ATF has not identified a valid exemption statute, it need not address this argument.

Dkt. No. 18 at 13-15; ATF Reply, Dkt. No. 26 at 1-3; Oral Argument Transcript ("Tr.") at 18:11-19:6. And because they were enacted prior to 2009, they do not need to cite to section 552(b)(3) in order to effectuate the statutory exemption. *See* ATF Br. at 14; ATF Reply at 2. The core of the argument is that the pre-2009 provisions continue to apply because Congress intended their prohibition on public disclosure to be permanent, as exemplified by the use of language of futurity, that is, language that applies the statute into the future. *See* Tr. at 19:5-20:7. For example, the 2008 Rider begins with the preface "beginning in fiscal year 2008 and thereafter . . . ," and the 2012 Rider begins with the preface "during the current fiscal year and in each fiscal year thereafter . . . ."

This argument by the government fails because Congress's subsequent acts, including the currently operative 2012 Rider, cover the whole subject of the earlier acts and are a substitute for the earlier acts. As a result, the pre-2009 versions of the Tiahrt Rider that the government seeks to rely upon are no longer operative. The Court reaches this conclusion for several reasons.

First, although implied repeal of statutory provisions is disfavored, the Court is bound by Supreme Court and Second Circuit precedent to apply what is sometimes referred to as the canon of repeal by comprehensive revision. *See Branch v. Smith*, 538 U.S. 254, 273 (2003) (plurality opinion) ("An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute.") (internal quotation marks omitted); *id.* at 293 (O'Connor, J., concurring in part and dissenting in part) (similar); *id.* at 286-87 (Stevens, J., concurring in the judgment) (similar); *Force v. Facebook, Inc.*, No. 18-397, -- F.3d --, 2019 WL 3432818, at *14 (2d Cir. July 31, 2019) (similar). Pursuant to this canon, congressional intent to repeal an earlier act by substitution or comprehensive revision may be found when the "later act purports to cover

the whole subject covered by [the] earlier act, embraces new provisions, and plainly shows that it was intended not only as a substitute for the earlier act but also to cover the whole subject involved and to prescribe the only rules with respect thereto." *United States v. Lovely*, 319 F.2d 673, 679-80 (4th Cir. 1963).

A comparison of the text of the 2008 and 2010 Riders demonstrates that the canon applies here. In relevant part, the 2008 Tiahrt Rider, the last Rider enacted before the OPEN FOIA Act's enactment, provides that:

> [B]eginning in *fiscal year 2008 and thereafter*, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database . . . except to
>
> (1) a Federal, State, local, tribal, or foreign law enforcement agency, or a Federal, State, or local prosecutor, *solely in connection with and for use in a criminal investigation or prosecution*; or
>
> (2) a Federal agency for a national security or intelligence purpose;
>
> and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in . . . Federal court or in an administrative proceeding other than a proceeding commenced by the [ATF] . . . ;

2008 Rider (emphasis added). The Rider goes on to specify further exceptions, including allowing "the publication of annual statistical reports on products regulated by the [ATF] . . . or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations." *Id.*

The 2010 Rider, passed following the 2009 OPEN FOIA Act, maintains the same basic text and structure but includes substantive changes. It provides that:

> [B]eginning in *fiscal year 2010 and thereafter*, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database . . , except to:

(1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or

(2) *a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution*; or

*(3) a Federal agency for a national security or intelligence purpose;*

*unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data*;

and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in . . . Federal court or in an administrative proceeding other than a proceeding commenced by the [ATF] . . . ;

2010 Rider (emphasis added to illustrate changes). The currently operative 2012 Rider repeats the language of the 2010 Rider, altering only the first line. *Compare id.* ("[B]eginning in fiscal year 2010 and thereafter . . .") *with* 2012 Rider ("[D]uring the current fiscal year and in each fiscal year thereafter . . .").

This comparison plainly demonstrates that Congress intended each Rider to comprehensively replace its predecessor. The use of express repetition of language of futurity in every enactment indicates that Congress understood each Rider to provide specific, ongoing rules for Firearms Trace System database disclosure that did not necessitate examining prior enactments on the subject. Similarly, the Riders' comprehensive treatment of identical subject matter makes clear that Congress intended each Rider to cover the entire field of Firearms Trace System database disclosure. This understanding is confirmed by Congress's inclusion of incongruent changes in enacting new versions of the Rider. For example, the 2008 Rider provides greater limits on disclosure than the later Riders because it does not allow disclosure to Federal, State, local, or tribal law enforcement agencies for purposes other than "in connection

with and for use in a criminal investigation or prosecution," while the 2010 and 2012 Riders impose no limit on disclosures to such agencies. At the same time, the 2008 Rider provides fewer limits on disclosure because it does not prohibit disclosure that might compromise the identity of an undercover officer or informant. There is nothing in either the text or structure of the various Tiahrt Riders to support the position that Congress intended two slightly different versions of the Tiahrt Rider, each of which purports to cover the field of disclosure, to remain in effect simultaneously. Instead, the Riders' text and structure makes clear that Congress intended to revise and replace the earlier statutes with the new ones.

Second, acknowledging the changes in language reproduced above, the Government concedes that some portions of the pre-2009 Tiahrt Riders have in fact been impliedly repealed. Tr. at 28:4-12. It therefore argues that the Court should look to the most recent Rider passed to understand what exceptions may apply to such disclosure, while looking to the versions of the Tiahrt Rider passed prior to 2009 to determine whether any Rider qualifies as a valid Exemption 3 Statute. Tr. at 20:18-23; 21:6-25:5. There is no textual basis for this position. To the contrary, an act that comprehensively covers identical subject matter to an earlier act and alters several of its provisions indicates a clear legislative intent to impliedly substitute the later act for its earlier counterpart. *See Force*, 2019 WL 3432818, at *14; *see also Lovely*, 319 F.3d at 679-80.

Third, to conclude that any pre-2009 Tiahrt Rider remains in effect would require the Court to effectively ignore Congress's unambiguous textual language and intent in passing the 2009 OPEN FOIA Act. This language prescribes clear rules for designating congressional enactments as exemption statutes: acts "enacted after the date of the enactment of the OPEN FOIA Act of 2009" must include a citation to section 552(b)(3), while earlier enactments require no such citation. If Congress intended to ensure that no citation to section 552(b)(3) was

required for reenactment of new versions of earlier statutes, it could have clarified that Congress was not required to include a clear statement rule in such circumstances. It did not do so.

Legislative history confirms this understanding. The OPEN FOIA Act's preamble and remarks made by its sponsor indicate that Congress's purpose in passing OPEN FOIA was to prevent Congress from shirking its duty to fully consider FOIA exemptions in any subsequently passed legislation. *See* 155 Cong. Rec 3175 (2009) (remarks of Senator Leahy); OPEN FOIA Act of 2009, S. 612, 111th Cong. (noting statutory purpose of "ensur[ing] an open and deliberative process in Congress by providing for related legislative proposals to explicitly state such required citations"). Yet this is precisely what ATF's position allows. ATF's argument to the contrary is that failing to identify the Tiahrt Rider as a qualifying Exemption 3 statute frustrates a competing statutory purpose: protecting Firearms Trace System database information from FOIA disclosure. But insofar as Congress wished to enact statutes that would exempt Firearms Trace Database data from disclosure following the enactment of the OPEN FOIA Act, it gave itself explicit instructions for how to do so. In light of the obligation to construe FOIA Exemptions narrowly, finding that Congress failed to meet those requirements in the present case vindicates rather than frustrates congressional purpose. *See Local 3, Int'l Bhd. Of Elec. Workers, AFL-CIO v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988) (requiring that FOIA Exemptions be "narrowly construed with all doubts resolved in favor of disclosure").

In reaching this conclusion, which is an issue of first impression in this Circuit, the Court is mindful that it is contrary to the decisions of other courts to have considered it. *See Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, No. 17-cv-6557-JSC, 2018 WL 3368884, at *8 (N.D. Cal. July 10, 2018) ("[T]he disclosure prohibitions set forth by Congress in the 2005 and 2008 [versions of the Tiahrt Rider] are still effective prospectively and beyond those fiscal years

as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them.") (quoting *Abdeljabbar v. ATF*, 74 F. Supp. 3d 158, 175-176 (D.D.C. 2014)); *see also P.W. Arms, Inc. v. United States*, No. C15-1990-JCC, 2017 WL 319250, at *4 (W.D. Wash. Jan. 23, 2017) ("[T]he Court . . . adopts the holding of the vast majority of cases addressing [whether the ATF may rely on the 2005 and 2008 Riders as Exemption 3 statutes]."); *Smith v. ATF*, No. 13-13079, 2014 WL 3565634, at *5 n.2 (E.D. Mich. July 18, 2014) (concluding that the court "need not . . . address" the Open FOIA Act because the 2008 Rider "provide[d] a permanent prohibition"); *Penn v. U.S. Dep't of Justice*, No. CIV S-10-2494 GEB EFB PS, 2012 WL 761741, at *6 n.3 (E.D. Cal. Mar. 7, 2012) (concluding that the 2005, 2008, and 2010 Riders all qualified as Exemption 3 statutes, and that the Court "need not . . . address" the Open FOIA Act because the 2005 and 2008 Riders "also apply here"), *R&R adopted*, 2012 WL 1131537 (E.D. Cal. Mar. 28, 2012); *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 144-45 (D.D.C. 2013) (concluding that the 2005 and 2008 Riders qualified as Exemption 3 statutes); *Caruso v. ATF*, 495 F. App'x 776, 778 (9th Cir. 2012) (concluding that the 2010 Rider qualified as Exemption 3 statute); *Reep v. U.S. Dep't of Justice*, 302 F. Supp. 3d 174, 183 (D.D.C. 2018) (concluding that the 2012 Rider constituted Exemption 3 statute); *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 163 (D.D.C. 2012) (concluding that the 2005 Rider qualified as Exemption 3 statute); *Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185, 204 (D.D.C. 2010) (same).[3]

---

[3] One district court initially concluded that the 2012 Rider did not constitute an Exemption 3 statute because it failed to cite section 552(b)(3), but later granted summary judgment for the ATF on the same grounds as the *Abdeljabbar* court. *See Fowlkes v. ATF*, 67 F. Supp. 3d 290, 300–01 (D.D.C. 2014); *Fowlkes v. ATF*, 139 F. Supp. 3d 287, 291–92 (D.D.C. 2015) (accepting ATF's argument that the pre-2009 Riders "remain active and enforceable" Exemption 3 statutes).

But the Court is not persuaded by these decisions. As an initial matter, several of the foregoing opinions do not examine the effect of the OPEN FOIA Act at all. *See, e.g.*, *McRae*, 869 F. Supp. 2d at 163; *Skinner*, 744 F. Supp. 2d at 204; *Reep*, 302 F. Supp. 3d at 183; *Caruso*, 495 F. App'x at 778. Those opinions that do analyze the issue presented here have not wrestled with the arguments discussed above. For example, in *Abdeljabbar*, the district court reasoned— as ATF does here—that Congress's decision to incorporate similar language into successive appropriations bills "demonstrate[d] its intent to continue the disclosure prohibition" and rejected as implausible any conclusion that Congress intended to repeal by implication a disclosure prohibition by reiterating it, particularly given the presumption against implied repeals. 74 F. Supp. 3d at 175. This argument, which certainly has strong intuitive sway, fails to examine at all the persuasive evidence that Congress intended to comprehensively replace each prior version of the Tiahrt Rider. In particular, it does not examine how the pre-2009 enactments may remain in effect after Congress passed new, comprehensive versions altering the applicable exceptions.

* * *

In sum, the Court concludes that ATF has not carried its burden of identifying a qualifying Exemption 3 statute. The 2012 Tiahrt Rider, which all parties agree is the operative rider for purposes of determining what information the ATF may or may not disclose, is not a qualifying Exemption 3 statute because it does not reference section 552(b)(3). And because the 2010 Tiahrt Rider replaced the 2008 Tiahrt Rider by complete substitution—indeed, because each Tiahrt Rider replaces its predecessor by complete substitution—the Tiahrt Riders enacted prior to 2009 are no longer operative law. In light of this conclusion, the Court turns to ATF's second contention: that Everytown's request requires creation of a record.

**B.      Everytown's Request Does Not Require the Creation of a Record**

FOIA obligates agencies to, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . [,] make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).  Pursuant to the 1996 E-FOIA Amendments, agencies responding to such records requests "make reasonable efforts to search for the [requested] records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C).  The required "search" includes reviewing by "automated means," while "record" is defined to include "information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format." 5 U.S.C. § 552(a)(3)(C) & D, § 552(f)(2)(A).

In interpreting this statutory language, courts have long held that FOIA requires agencies to search for, but not to create, responsive records.  As the Supreme Court put it, FOIA "only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975).  It does not require agencies to "produce or create explanatory material," *id.* at 161-62, or to "answer questions" posed by FOIA requests, *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985).  *See also Pierce & Stevens Chem. Corp. v. U.S. Cons. Prod. Safety Comm.*, 585 F.2d 1382, 1388 (2d Cir. 1978) ("[U]nder the FOIA, an agency does not rewrite a document or create informational material.  It discloses existing documents, which it has already prepared."); *Kissinger v. Reporters Comm. For Freedom of the Press*, 445 U.S. 136, 159 n.2 (1980) (explaining that FOIA does not "compel[ ] the Government to conduct research on behalf of private citizens").  Courts have repeatedly reaffirmed the bar on record creation in response to FOIA requests following the enactment of the E-FOIA Amendments.  *See, e.g., ACLU v. DOJ*,

681 F.3d 61, 71 (2d Cir. 2012) (noting that replacing references to classified information with alternative language meant to preserve the text's meaning "would effectively be 'creating' documents—something FOIA does not obligate agencies to do.").

Here, ATF contends that it is not required to respond to Everytown's request because it has never prepared annualized reports summarizing the specific statistical information Everytown seeks. ATF Br. at 17-18 (citing Houser Decl. ¶ 30). While ATF maintains electronic records of individual traces conducted—coded by various criteria in the Firearms Tracing System database—its declarant affirms that it does not maintain, in any format, records of the complete number of traces of firearms that correspond to each of Plaintiff's specific sets of criteria, such as completed or attempted suicides for a given year or who possessed firearms used in such completed or attempted suicides. Houser Decl. ¶¶ 30-31. Instead, to generate accurate counts after (1) conducting searches to identify the relevant trace data, ATF would need to (2) clean up the raw data by performing six levels of data filtering and filling in gaps with educated guesses; (3) insert the resulting statistics into applicable software and create a visual depiction of the data; and (4) subject the resulting product to multi-level reviews to ensure the accuracy of the data and the format in which it is presented. ATF Reply at 8 (citing Houser Decl. ¶ 21, 30-33.). ATF concedes that the first step, which its declarant affirms would take one hour per year of data requested, Houser Decl. ¶¶ 31-32, is required by FOIA. But it argues that complying with the remainder, which would require four dedicated working days, Houser Decl. ¶¶ 31-32, would constitute record creation.

The Court concludes that this declaration fails to carry ATF's burden of demonstrating that Everytown's request requires ATF to create records.

The E-FOIA Amendments clearly require agencies to sort "a pre-existing database of information to make information intelligible" so that it may be transmitted to the public. *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012). Accordingly, conducting such a search cannot constitute creating new records or conducting research so as to fall outside of agency disclosure requirements. *Id.*; *see also, e.g.*, *People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 15 (D.D.C. 2006) (requiring agency to conduct a PACER search of 44,000 electronically-stored fields to identify data targeted in FOIA request). Nor does it constitute creating a record to sort a database by a particular data field, *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 270, or to create the computer programming necessary to conduct a search, *Schladetsch*, 2000 WL 33372125, at *3. And an agency may be obligated to respond to a FOIA request even if "the net result of complying with the request will be a document the agency did not previously possess." *Id.*

Moreover, even before the passage of the E-FOIA Amendments, courts held or assumed that agencies could be obligated to disclose names and addresses even if the information sought was contained in numerous separate documents and responding would require the agency to compile such information into one. *See Disabled Officer's Ass'n v. Rumsfeld*, 428 F. Supp. 454, 456-57 (D.D.C. 1977) (concluding that compiling such information did not constitute creating records), *summarily aff'd*, 574 F.2d 636 (D.C. Cir. 1978); *Ditlow v. Shultz*, 517 F.2d 166, 169 (D.C. Cir. 1977) (assuming that uncompiled names and addresses may constitute a "file" for purposes of the § 552(b)(6) exemption). Taken together, these authorities suggest that a request for data entry counts may fall within agencies' obligations to "search" for an agency "record," although whether an agency is obligated to respond in a given case will depend upon the design and structure of its database.

Here, ATF's declarant fails to demonstrate that producing data entry counts from its Firearms Tracing System database would require it to create new records. Indeed, ATF concedes this much. In its briefs and at oral argument, ATF concedes that the search required to generate the raw data Everytown requests is required by FOIA and that producing equivalent data counts from a paper records system would not constitute record creation. *See* ATF Reply at 8 ("FOIA only requires ATF to go as far as step (1)—which is to run a reasonable search—and then produce the records located by the searches."); Tr. at 31:25-32:1 ("A search for raw data can be done in the database."); *id.* at 41:2-6 (conceding that the agency would be required to respond to a request for the number of sheets stored in a paper records system); *id.* at 45:18-20 ("I would think [that it is feasible to produce the number of entries requested]."). It is only because ATF interprets Everytown's request to require ATF to clean up that data, generating a customized statistical report not maintained by ATF, that ATF argues the request requires record creation.

The problem with this argument is that, as Everytown represented in both its summary judgment briefing and at oral argument, Everytown's request does not require ATF to engage in any subsequent cleanup of the data generated by a Firearms Tracing System database search. *See* Everytown Br. at 21 ("Everytown here seeks aggregate numbers . . . and the data within the [Firearms Tracing System] database is coded according to these criteria, such that a simple search will yield both the responsive database entries and the requested numbers thereof," a search the Houser Declaration estimates "will take one hour to query [from] the Firearms Tracing System."); *id.* at 23 ("ATF entirely fails to explain why it cannot simply search its database by the applicable categories and provide Everytown with the resulting numbers."); *id.* at 24 ("ATF fails to show why Everytown's request requires any of the [cleanup] steps beyond the initial search."); Everytown Reply at 9 ("[T]he Houser Declaration fails to explain why ATF

cannot simply perform the first step of the four-step process it describes (the initial search) and

produce the resulting numbers."); Tr. at 16:24-17:4 (explaining that, while Everytown would

"would love to have the most accurate data," it "understand[s] that it's possible that a trace

request was incorrectly maybe missing some fields" and seeks only a "reasonable search" for

"what [ATF] has that's correctly coded"); *id.* at 17:17-20 ("[I]nherent in the FOIA request is that

. . . we would want the data pulled that would result from putting the queries that coincide with

the information that we've asked for."); *id.* at 48:2-9 (explaining that, when the request was

drafted, Everytown had the Firearms Tracing System database in mind, and imagined that the

numbers it requested corresponded to the number of entries stored in the database); *id.* at 51:17-

19 ("We're asking for the searches to be run and to be provided with the results of those

searches.").

ATF explained at oral argument that it interpreted Everytown's FOIA request to call for

"the correct number" of items in each category sought, which it views as necessarily requiring

each of the data cleanup steps its declarant describes. Tr. at 35:24-36:2, 36:8-18. Yet it offers no

explanation for why, in the face of Everytown's statements to the contrary and given the wording

of Everytown's request, it is entitled to rely on this interpretation.

To the contrary, agencies are obligated to construe FOIA requests liberally, *Nation

Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995); requesters are required only

to "reasonably describe[ ]" the desired records, and "the identification standard in the FOIA

should not be used to obstruct public access to agency records," *Truitt v. Dep't of State*, 897 F.2d

540, 545 (D.C. Cir 1990) (quotation omitted); *see also Hemenway v. Hughes*, 601 F. Supp. 1002,

1005 (D.D.C. 1985) ("[T]he agency must be careful not to read the request so strictly that the

requester is denied information the agency well knows exists in its files, albeit in a different form

from that anticipated by the requester."). For example, in *Nation Magazine*, the D.C. Circuit held that an agency could not interpret a request for information "pertaining to" Ross Perot, and with special interest in his efforts to assist in drug interdiction, to require the agency only to look for records indexed under Perot's name, but instead required the agency to include all "subject matter files on topics of interest to appellants." *Nation Magazine*, 71 F.3d at 890. Similarly, one court in this Circuit has held that, in light of the obligation to construe FOIA requests liberally, an agency could not interpose an objection that cleaning raw data to respond to a request constituted record creation if the agency could disclose a raw data sample for the requester to code itself. *See Immigrant Def. Project v. U.S. Immigration and Customs Enforcement*, 208 F. Supp. 3d 520, 532 (S.D.N.Y. 2016).

The foregoing case law stands in close parallel to the present case. Everytown's records request seeks "records containing aggregate trace data that document . . . the number of each firearm type" or "the number of guns" involved in completed and attempted suicides across various parameters. Everytown FOIA Request at 2-3. In other words, Everytown seeks the number of entries in the database corresponding to searches run using different sets of existing variables. *See* Tr. at 17:18-20; 48:2-9; 51:17-19. Although ATF's interpretation of this request as seeking "correct," cleaned-up numbers is not necessarily unreasonable, it falls short of ATF's obligation to construe Everytown's request liberally. Indeed, Everytown has repeatedly indicated that, in its view, searches for the raw data stored in the Firearms Tracing System database would be responsive to its records request. *See id.* Under these circumstances, the Court cannot conclude that ATF has carried its burden of demonstrating that Everytown's request requires record creation. As ATF conceded at oral argument, ATF has not supplied a declarant who has demonstrated that producing the raw data Everytown seeks would require

ATF to create responsive records; to the contrary, ATF's declarant indicated that it would take two of its analysts one hour to conduct the requested search, and in its briefing ATF conceded that this search was required by FOIA.

The Court acknowledges that other courts have reached differing conclusions about the production of aggregate data or descriptive information. For example, in *National Security Counselors*, the plaintiff requested database listings for all FOIA requesters for three fiscal years according to the fee categories to which the CIA assigned them and a record indicating the ten individuals responsible for the most FOIA requests submitted in each of those years. 898 F. Supp. 2d at 269-72. The district court reasoned that, under the E-FOIA Amendments, agencies were obligated to disclose "particular points of data (i.e., the records themselves)" from within a database. *Id.* at 271. However, a FOIA request for an index of a database that did not "seek the contents of the database, but instead essentially [sought] information about those contents, [was] a request that require[d] the creation of a new record, insofar as the agency [had] not previously created and retained such a listing or index." *Id.* In *Center for Investigative Reporting v. United States Department of Justice*, the district court applied the same logic to a FOIA request similar to the request at issue here, concluding that the fact that the plaintiff's request would have required ATF to derive statistical aggregate data from the records in the Firearm Tracing System database necessarily entailed the creation of a new record. No. 17-cv-6557-JSC, 2018 WL 3368884, at *9-10 (N.D. Cal. July 10, 2018).

As an initial matter, the Court notes that *National Security Counselors* is distinguishable from the present case, as producing an index may present distinct questions from producing aggregate counts of entries in an agency database. But insofar as these authorities should be read to hold that producing aggregate data or other descriptive information about an agency database

necessarily constitutes record creation, the Court disagrees. As explained above, whether producing raw entry counts housed in a database requires an agency to engage in record creation depends upon the structure of the underlying database. If such entry counts are apparent on the face of a database when searches required by FOIA are conducted, producing those readily apparent counts does not constitute record creation. That the agency might be required to compile the resulting information into a response is a standard feature of FOIA requests, not a basis for concluding that the request asks the agency to go beyond its FOIA obligations. After the E-FOIA Amendments, whether information in a database constitutes an agency record hinges not on whether the information is housed in the form requested, but whether generating the information requires the agency to engage in additional research or conduct additional analyses above and beyond the contents of its database.

For example, as ATF agreed at oral argument, if an agency stored Firearms Tracing System database information in physical file cabinets, collating trace results into drawers and subfolders by every possible set of criteria, it would be required to answer a request for the number of documents stored in each subfolder. Tr. at 40:13-41:6. As ATF acknowledged, it would be obligated to disclose such information even if the agency had stored duplicate files or papers had been misfiled or contained incorrect information. *Id.* at 41:16-43:11. These potential input errors could not serve as a basis to deny a FOIA request for a paper analog to the present request. The same conclusion applies with equal or greater force in the context of electronically stored data in a searchable database. *See* 5 U.S.C. § 552(f)(2)(A) (defining "record" to include "information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format").

The legislative history of the E-FOIA Amendments provide further support for the Court's conclusion. In passing the E-FOIA Amendments, Congress expressly found that government agencies should "use new technology to enhance public access to agency records and information" and stated that its purposes in passing the E-FOIA Amendments included "improv[ing] public access to agency records and information" and "maximiz[ing] the usefulness of agency records and information maintained, used, retained, and disseminated by the Federal Government." Pub. L. No. 104-231, §§ 2(a)(6), 2(b)(2) and (3), 110 Stat. 3048, 3048 (1996). Moreover, in a contemporaneous Report, the House explained that, "[u]nder the definition of 'search' in the bill, the review of computerized records would not amount to the creation of records[;] [o]therwise, it would be virtually impossible to get records maintained completely in an electronic format, like computer database information, because some manipulation of the information likely would be necessary to search the records." H.R. Rep. No. 104-795, at 22 (1996). These authorities make clear that the narrow interpretation offered by the *National Security Counselors* and *Center for Investigative Reporting* courts—placing emphasis on the form in which the data is stored—is not what Congress intended in amending FOIA to ensure the accessibility of electronic data.

* * *

In sum, ATF has not carried its burden of demonstrating that, given the structure of the Firearms Tracing System database, conducting a search to produce the raw data entry counts Everytown requests would require it to create records. As such, summary judgment for Plaintiff is required. *See NRDC*, 36 F. Supp. 3d at 406 (granting summary judgment for FOIA plaintiff when agency defendant had not met its burden of demonstrating that requested information fell under FOIA exception); *see also Schladetsch*, 2000 WL 33372125 (granting summary judgment

for plaintiffs when agency declarations failed to demonstrate that FOIA request required record creation or that the search would require unreasonable efforts that would interfere with agency's computer system).

## IV. CONCLUSION

For the foregoing reasons, ATF's motion for summary judgment is DENIED, and Everytown's motion for summary judgment is GRANTED. The ATF is hereby ordered to produce the requested records. The Clerk of Court is respectfully requested to enter judgment and close this case.

This resolves Dkt. Nos. 17 and 29.

SO ORDERED.

Dated: August 1, 2019
New York, New York

ALISON J. NATHAN
United States District Judge